IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DENNIS B. SINGLETON,<br><br>Plaintiff,<br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner Of Social Security,<br><br>Defendant. | CIVIL ACTION NO. 6:03CV00099 |

## REPORT AND RECOMMENDATION

Plaintiff Dennis B. Singleton ("Singleton") brings this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383F. This case was referred to the undersigned magistrate judge on March 23, 2004, for report and recommendation. After briefing and oral argument on the appeal, and based on a thorough review of the administrative record and relevant case law, it is recommended that the Commissioner's motion for summary judgment be granted as the decision of the Commissioner was founded on correct legal principles and supported by substantial evidence.

## ADMINISTRATIVE PROCEEDINGS

Singleton filed an application for a period of disability and Disability Insurance Benefits on December 31, 2001, alleging disability as of December 31, 1995, based on back and neck pain. (Record, "R." at 72, 345) The application was denied initially (R. 28-30), and on

reconsideration by the Social Security Administration (R. 31-33). Singleton requested a hearing which was conducted on March 18, 2003, at which time he testified before Charles R. Boyer, Administrative Law Judge (ALJ). (R. 336) Singleton was represented by counsel, Robert J. Golcheski, at the March 18, 2003 appeal hearing. On March 27, 2003, the ALJ found that Singleton was not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under §§ 216(i); 223, 1602 and 1614(a)(3)(A) respectively, of the Social Security Act. (R. 27) The ALJ's findings became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on October 17, 2003. (R. 6-10)

In making the determination that Trent is not entitled to benefits, the Commissioner adopted the following findings of the ALJ:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance-Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2000.

2. The claimant has worked since his alleged onset date, but his applications are not being denied on the basis of work activity alone.

3. The claimant has an impairment of his back, which is severe based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. The claimant does not have impairments that meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. There has not been any significant period of time when the claimant could not have performed the range of work which the State Agency identified in its assessment at Exhibit 6F. This includes at least the full range of sedentary work.

8. The claimant is unable to perform his past relevant work as a heavy equipment operator or chain saw operator; he could probably perform the job that he performed during his last incarceration for a drug related felony. (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a younger individual (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

11. Transferability of skills is not a determinative issue in this case (20 CFR §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform the full range of sedentary work (20 CFR §§ 404.1567 and 416.967).

13. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of not disabled is directed by the Medical-Vocational Rules of Table 1 of Appendix 2 and in particular by rule 201.21.

14. The claimant was not under a disability as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> [T]he inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The Social Security Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, and disabled persons who have income and resources below a specific amount. 42 U.S.C. § 1381 et seq; 20 C.F.R. § 416.110. The standard for determining eligibility for SSI disability benefits consists of a two-fold test. The claimant must show a medically determinable physical or mental impairment, and the impairment must be such as to render the claimant unable to engage in substantial gainful employment. Walker v. Harris, 642 F.2d 712 (4th Cir. 1981); Blalock v. Richardson, 438 F.2d 773 (4th Cir. 1972); 42 U.S.C. § 423(d); 20 C.F.R. § 404.1501(b).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Secretary's findings and that her conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Secretary, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## FACTS

Singleton, born on September 16, 1957, is 46 years old. (R. 28) Singleton completed high school and is literate. (R. 340) As a small child, Singleton sustained a gunshot wound, and

suffered from temporary paralysis below the waist while he was in first grade. (R. 343) Singleton testified that "[a]s far back as I can remember, I have had back problems. At least three or four times a year something would slip. It would seem like it would maybe touch a nerve going down in my legs, and it was just like taking my legs out from under me." (R. 343)

Singleton had two discs removed from his lumbar spine in 1993 and was doing well until he was in a motor vehicle accident later on that year. (R. 343) Singleton had another back surgery in 1996. In the applications for benefits in this case, Singleton claims an onset of disability dating back to December 31, 1995, (R. 277), due principally to back and neck pain.

The ALJ concluded that Singleton was not disabled as he retained the residual functional capacity for a wide range of even the least demanding level of work, sedentary work, (R. 19), concluding that:

> Based on the evidence of record, the Administrative Law Judge finds that the claimant's allegations of disability are utterly lacking in credibility. The Administrative Law Judge finds that there has not been any significant period when the claimant was not capable of at least sedentary work and that there has not been any period when the claimant was disabled.

(R. 20)

As support for this conclusion, the ALJ relied on the following evidence:

1.  Singleton filed his first applications for Social Security benefits in 1993, claiming disability as of July, 1993. These applications were denied and not pursued. In connection with his present applications, Singleton completed a Work History Report which indicated that he worked as a tree cutter and skidder operator from July 1991 to March 1994 and owned and operated a bulldozer and motor grader between April 1994 and December 1995. Noting the

6

inconsistency between the prior application and the work history listed on the present applications, the ALJ stated that "[t]he obvious and significant conflict between the claimant's work activities, as reported in the forms he completed with his current applications, and his previous allegations of disability during 1993 goes directly to his credibility and undermines his credibility." (R. 20)

2. The ALJ noted that Singleton's present applications for benefits indicated that he did no work following December, 1995, but after the State Agency completed its review, it was learned that Singleton worked while at Federal Correctional Institute-Petersburg ("FCI-Petersburg"), where Singleton was incarcerated for his second conviction of a drug related felony from July 7, 1997 to June 30, 2001. (R. 20-21)

3. At the administrative hearing, Singleton testified that while at FCI-Petersburg, he worked until October, 2000, six or seven hours a day, as follows:

> I set in this office, and I programmed the machine that prints up the identification numbers on a rubber tubing. Like a slink tubing, you put it over a cable, and take a heat gun, and it shrinks down tight, and it identifies the number of what that cable is.
>
> Basically, I worked every day. I was off for medical reasons some, and I had someone in the office with me that did most of the work for me.
>
> There was two of us doing this job . . . Because he did most of the work, and I slept half of the time.

(R. 341-42)

4. The ALJ noted that Singleton eventually reported that he worked while incarcerated in December 2002 as well as his prior work, which "further illustrates that his

7

statements and allegations should not be fully credited unless there is independent credible evidence to support them." (R. 20)

  5. The ALJ reviewed the applications and evidence concerning Singleton's daily activities after being released from prison, including certain activities caring for his parents, such as cooking, going to the pharmacy and grocery store, as well as activities such as driving a four wheeler to look after his father's cows, attending church and playing the drums in a church musical group. (R. 21) Based on this review, the ALJ concluded:

> The Administrative Law Judge does not find that the claimant's allegations that he was medically incapable of continuing work at Inicor (sic) after October 2000 to be credible. The Administrative Law Judge does find that the claimant's work at Inicor (sic) either was substantial gainful activity or was compelling evidence of his capacity for substantial gainful activity. The Administrative Law Judge also finds that the claimant's work in caring for his disabled parents and their livestock is compelling evidence of his capacity for substantial gainful activity. Nevertheless, the record does not document that the claimant received income or room and board in exchange for his services or that he has engaged in substantial gainful activity since October 2000.

(R. 21)

  6. The ALJ reviewed and considered the medical evidence that was before the State Agency, the medical records and medical source assessments that were submitted since the State Agency completed its review and Singleton's activities and statements, and concluded that he was in "full agreement with the State Agency's residual functional capacity assessment and disability assessment." (R. 22)

  7. The ALJ chronicled Singleton's medical records and history with Dr. Stephen L. Thompson (Village Medical Center Family Practice), and from the Augusta Pain Management

8

Center and concluded that "the evidence indicates that the claimant has history of back disorder and back surgery and that he has hypertension and that he has complaints of musculoskeletal pain." (R. 23)

8. The ALJ expressly considered a letter from Dr. Thompson dated February 7, 2003, in which Dr. Thompson "said that he did not think that there was any possibility that the claimant would return to work. He referenced the claimant's history of treatment at the August (sic) Pain Center and his history of surgery, but he identified no specific limitations or medical findings or observations that would support his conclusion that the claimant would or could not return to work." (R. 23)

9. The ALJ considered and recounted the testimony at the March 18, 2003, hearing from Singleton regarding his activities, including his medical history and the fact that he no longer was able to use a tractor to feed his father's cattle as he had done previously. Singleton testified about the fact that he plays the drums in a church band and practices approximately two hours a week. John Hidey, a friend and neighbor, testified that Singleton no longer fed the cattle, and Tina Colbert, his former sister in law, testified that she saw Singleton at band practice and that he could not sit during the entire Sunday evening practice. (R. 23)

10. The ALJ adopted the findings of the State Agency that Singleton had a severe impairment, but did not have an impairment that was severe enough to meet or medically equal any of the impairments listed in Appendix I, Subpart P, Regulations No. 4. The ALJ also adopted the State Agency residual functional capacity assessment and noted that "[n]o treating, examining, or reviewing physician has identified medical signs and findings that are sufficient to warrant a favorable decision at the third step of the evaluation process." (R. 23)

11. In determining whether Singleton retains the residual functional capacity to perform the requirements of his past relevant work or other work that exists in significant numbers in the national economy, the ALJ considered Singleton's activities, statements and subjective symptoms, including pain, and the extent to which Singleton's subjective symptoms should reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CRF §§ 404.1529 and 416.929, and Social Security Ruling 96-7p. The ALJ also considered all medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of impairments and resulting limitations. (R. 23-24)

12. The ALJ summarized the evidence as follows:

> The claimant's history of employment during his incarceration (employed through October 2000) and the lack of medical evidence of a significant deterioration in his condition at the time that he stopped this work suggests that he was not disabled at the time that his insured status expired. His activities in caring for his disabled parents and the family's live stock and in maintaining the home for himself and his parents (cooking, cleaning, shopping, laundry, etc) and in attending church and regularly performing in a band all suggest that he was not disabled when he filed his current applications or at the present time. The claimant does have a history of back impairment and might reasonably be expected to have some residual pain and limitations, but he would not be expected to have pain or limitations that preclude all work or that produce total and permanent disability. Two State Agency physicians reviewed the majority of the records and concluded that the claimant retained the residual functional capacity for a wide range of light work (Exhibit 6F). Since the State Agency completed its review some additional records have been generated and submitted into the record. These consisted of notes of visits to Augusta Pain Management Center (frequency being slightly less than once every two months), where he received pain medication (methadone) and epidural steroid injection (Exhibits 7F, 8F) and one brief treatment note from the claimant's family physician, Dr.

> Thompson, which documented a visit for a new prescription of antihypertensive medication in January 2003 (Exhibit 9F, page 3) and a brief statement from the family physician, Dr. Thompson, which was drafted for counsel and stated that Dr. Thompson did not think it was possible for the claimant to return to work (Exhibit 9F, page 2). Dr. Thompson's letter referenced the claimant's history (remote) of surgery and his complaints of chronic pain and radiculitis, but it did not relate Dr. Thompson's opinion to specific limitations and Dr. Thompson's conclusion was/is not consistent with the State Agency assessment or with the claimant's level of activities. It is entirely possible that Dr. Thompson was indicating that the claimant could not return to his previous heavy work as a heavy equipment operator or chain saw operator, which would be consistent with the State Agency assessment and the Administrative Law Judge's decision. In any event if Dr. Thompson's statement was intended to indicate that the claimant was incapable of performing sustained full time employment at all levels of exertion, the record does not support the statement nor does the record does not support the claimant's allegations of chronic and completely incapacitating pain.

(R. 24)

13. On the basis of this evidence, the ALJ concluded that he was "persuaded that during the relevant period, there has not been any significant period of time when the claimant could not have performed the range of work which the State Agency identified in its assessment . . . and this assessment includes the full range of sedentary work." (R. 24)

14. The ALJ agreed with the State Agency that Singleton could not return to the past relevant work (heavy equipment, forklift and chain saw operator), but noted that the State Agency was not aware of Singleton's prison employment which Singleton only reported after the State Agency completed its review. The ALJ concluded that "[i]t appears that the claimant could probably return to this employment; however, as the claimant will be found "not disabled" at the fifth and final step of the evaluation process, the Administrative Law Judge has not delayed the

case further to obtain additional evidence regarding the claimant's employment during his incarceration." (R. 25)

15.     As Singleton was 45 years old, literate and possessed the residual functional capacity for at least the full range of sedentary work, the ALJ found based on the Medical-Vocational Guidelines (Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.21), that he was "not disabled" at any time through the date of his decision. (R. 25)

## ANALYSIS

The Commissioner uses a five-step process in evaluating DIB claims. See 20 C.F.R. § 404.1520 (2003). See also Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work. See 20 C.F.R. § 404.1520 (2003). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. See 20 C.F.R. § 404.1520(a) (2003).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. See 42 U.S.C.A. § 423(d)(2); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall, 658 F.2d at 264-65; Wilson v. Califano,

617 F.2d 1050, 1053 (4th Cir. 1980). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Mastro v. Apfel, 270 F.3d 171 (4th Cir. 2001).

The decision of the Commissioner was made at the fifth step of the evaluation process. Based on the objective medical findings and subjective opinions of treating, examining and evaluating physicians, the Medical-Vocational grids, Singleton's past work and daily activities, and an assessment of his credibility, the ALJ agreed with the State Agency's assessment that Singleton retained residual functional capacity to perform the full range of sedentary work. It is apparent from the ALJ's decision that the credibility of Singleton's claim that he could perform no work at all was undermined by evidence as to his recent work history and daily activities. As noted below, the ALJ's determination as to Singleton's lack of credibility is telling and is fully supported by substantial evidence in the record. As such, it may not be disturbed upon review by this court. Id.

The Commissioner employed the Medical-Vocational listings of the regulations (the grids). 20 CFR § 416.969. Application of the grids is appropriate when the evidence indicates that the plaintiff meets certain educational, age and functional capacities consistent with those specified in the grids. When those criteria are properly applied, then the grids may be used to determine whether the individual meets the standard for disability. While the grids are inapplicable if the claimant's condition is not consistent with those set out in the grids, that is not the case here. Where the Medical-Vocational guidelines contain a rule that matches the factors in any given case, the regulation directs a finding as to disability or non-disability. Title 20, Part

13

404, Subpart P, Appendix 2, Rule 200.00(a). It is clear from the record that the Commissioner was correct in relying on the grids and applied appropriate standards in making the subsidiary findings used in applying the grids.

Singleton argues on appeal that the ALJ failed to give proper weight to the opinions of Dr. Thompson, a treating family practitioner, and Dr. Branson, who performed an evaluation on Singleton at the request of counsel some months after the ALJ's decision. Singleton is wrong. The ALJ expressly considered Dr. Thompson's views as expressed in his letter of February 7, 2003, and found that his stated opinion did not warrant a finding of disability in light of all of the evidence in the record. Further, although Dr. Branson did not evaluate Singleton until after the ALJ's decision, his wholesale disability opinion is not supported by the views of Dr. Grice, the physician who treated Singleton consistently for two years for his back and neck pain. Both Dr. Thompson's and Dr. Branson's opinions are undermined by Singleton's own reports of his activities.

Specially, as regards Dr. Thompson, he stated in a letter to counsel dated February 7, 2003, that "I do not think that there is any possibility of Dennis Singleton returning to work." (R. 274) Dr. Thompson's letter indicated that Singleton was being treated by Dr. Preston Grice, a pain management specialist, for severe chronic pain, including severe lumbar pain and left lower limb radiculitus. (R. 274) The ALJ noted the ambiguity in Dr. Thompson's use of the words "returning to work" and questioned whether the opinion applied only to Singleton's previous heavy work as a heavy equipment or chain saw operator. The ALJ noted that, to the extent that Dr. Thompson's opinion literally concerned only his returning to such heavy duties, Dr. Thompson's opinion was consistent with the assessment of Dr. Grice, the State Agency

14

evaluating physicians, and ultimately, the ALJ. (R. 24) The ALJ rejected a more expansive interpretation of Dr. Thompson's letter, indicating that "the record does not support the claimant's allegations of chronic and completely incapacitating pain." (Id.) Given the ALJ's assessment of Singleton's credibility, the length and breadth of his treatment by Dr. Grice, who determined that Singleton "is not completely incapacitated" (R. 323), the fact that Singleton had worked at FCI-Petersburg after the claimed onset of disability (R. 341-42), and the evidence in the record that Singleton had worked "bush-hogging on his tractor" around February, 2002 (R.256), and "sitting and operating a crane" as late as March, 2003 (R. 333), the ALJ clearly considered Dr. Thompson's opinion in light of the entire record and concluded that Singleton was not disabled from all work. Even if Dr. Thompson's letter is read to mean what it clearly does not say – that Singleton cannot do any work – Fourth Circuit precedent does not require that a treating physician's testimony "be given controlling weight" in all circumstances. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992). In fact, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) both provide, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight." By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996), quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992).[1]

---

[1] In this regard, it is worth noting that Singleton's medical record indicates that beginning August, 2001, he saw Dr. Grice 19 times, Dr. Thompson less than half as much, 9 times, and Dr. Branson only once.

15

Singleton also argues that the Commissioner did not consider the evaluation done by Dr. Donald Branson the summer following the ALJ's decision. Dr. Branson examined and evaluated Singleton once on July 16, 2003 and reported in a letter to counsel that "[a]t the present time he describes that his problems now primarily consist of low back pain with radiation into the left leg and lower midline cervical and left arm pain with a tender upper lumbar area." (R. 298) Based on his examination, Dr. Branson concluded on August 7, 2003 that "[t]his individual is absolutely and unequivocally disabled from any gainful persistent employment in today's economy." (R. 301)

On brief and at argument, the Commissioner contrasted Dr. Branson's isolated examination and evaluation of Singleton with the two year treatment of Singleton by Dr. Grice of the Augusta Pain Management Center from late 2001 through 2003. Based on his history of treating Singleton for chronic cervical and lubrosacral pain since November, 2001, Dr. Grice wrote on March 18, 2003, that Singleton "has had moderate pain reduction with . . . medications." (R. 323) Dr. Grice stated that Singleton's signs and symptoms were consistent with anatomical findings by MRI, and concluded that "[w]hile *Mr. Singleton is not completely incapacitated by his previous injuries and resulting surgeries,* I strongly believe that he will never adequately be able to return to the previous employment operating heavy equipment and doing manual labor." (Id., emphasis added.) In contrast to Singleton's one visit to Dr. Branson, Singleton saw Dr. Grice on at least a monthly basis for his lumbro-sacral and cervical spine pain after November 16, 2001. (R. 323) The ALJ correctly accorded Dr. Grice's opinion, reached in the context of a substantial and ongoing treating physician-patient relationship, greater weight

than that of Dr. Branson who saw Singleton on only one occasion for the purposes of an evaluation. See 20 C.F.R. §§ 404.1527, 416.927.

Not only is the ALJ's finding of no disability supported by substantial evidence in the form of the medical judgment of Dr. Grice, Singleton's long standing physician who managed the back and neck pain upon which Singleton bases his disability claim, and the judgment of two evaluating State Agency physicians, it is corroborated by Singleton's own words in the record. Tellingly, at a follow-up visit to see Dr. Grice on March 21, 2003, just ten days after he testified at the administrative hearing that he had not worked since 2001, Singleton provided Dr. Grice with the following information regarding his recent activities:

> He notes that he has been working, operating heavy machinery approximately 9 days last month. His work mostly involves sitting and operating a crane, so is not very stressful. He denies any new lower extremity numbness, tingling or weakness.

(R. 333) The ALJ's negative assessment of Singleton's credibility is aptly borne out by this admission.

Singleton argued at the hearing that his case should be remanded for a vocational expert assessment in light of Dr. Branson's evaluation. Given Singleton's statements to his treating physicians in 2002 and 2003 as to his activities in bush hogging and operating a crane, and the assessment of the ALJ that Singleton's "allegations of disability are utterly lacking in credibility," there is no basis for such a remand as any vocation expert assessment favorable to Singleton would be unavoidably undermined by his statement to Dr. Grice that he operated a crane for nine days in the month before March 28, 2003. The medical record reveals that Singleton did not voice any complaints to Dr. Grice concerning this work; indeed, he described it

as "not very stressful." In light of this evidence, nothing would be served by the requested remand.

In sum, the record contains substantial evidence to support the findings of the ALJ that Singleton was not disabled based on his age, education, work experience and residual functional capacity. The ALJ had the opportunity to assess the credibility of Singleton's claim of disability and found that his credibility was undermined by inconsistencies in his 1993 and 2001 applications regarding his work activities and his failure to report the work at FCI-Petersburg on his application. (R. 20-21)

The ALJ evaluated Singleton's entire medical record and the opinions of his treating pain physician, Dr. Grice, as well as the two State Agency evaluating opinions that he was not totally incapacitated. The ALJ considered the opinion of Singleton's family doctor, Dr. Thompson, and found that to the extent it stated that Singleton was incapable of performing any work, this opinion was not supported by and inconsistent with other substantial evidence. The ALJ considered evidence of Singleton's activities based on his testimony at the administrative hearing and statements contained in the medical records, including his work at FCI-Petersburg, performing daily activities and caring for his parents, bush hogging on the farm as late as 2002, and playing drums in the church band. Clearly, the record contains substantial evidence to support the ALJ's finding that Singleton is not disabled and is not entitled to Disability Insurance Benefits and Supplemental Security Income. A review of the record and relevant case law indicates that the decision of the Commissioner is supported by substantial evidence and that correct legal principles were applied. For these reasons, it is recommended that the summary judgment be granted and the decision of the Commissioner be affirmed.

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this 13th day of August, 2004.

Michael F. Urbanski
United States Magistrate Judge